**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SUPER INTERCONNECT TECHNOLOGIES LLC, | ) ) | |
| | ) | Civil Action No. 2:18-cv-00463-JRG |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| GOOGLE LLC, | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF SUPER INTERCONNECT TECHNOLOGIES, LLC'S RESPONSE IN
OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS FOR
IMPROPER VENUE UNDER RULE 12(b)(3) AND 28 U.S.C. § 1406**

## I.       INTRODUCTION AND BACKGROUND

About six months ago, this Court found venue to be proper as to Google LLC ("Google") in this District under 28 U.S.C. § 1400(b) based on Google's Global Cache ("GGC") servers located in this District. *See SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 966 (E.D. Tex. 2018) ("*SEVEN Networks*"). Specifically, in a well-reasoned opinion, this Court found that both the GGC servers and their locations constitute a physical place that is a regular and established place of business of Google. *See id.* Now, based on the same facts – facts that Google *does not dispute* – Google argues in its current Motion to Dismiss (Dkt. No. 13) (the "Motion") that this Court should reach the *opposite* conclusion on the same facts. Super Interconnect Technologies LLC ("SIT") requests that this Court deny Google's Motion.

Google continues to press its position despite the fact that both this Court and the Federal Circuit rejected Google's arguments on this issue multiple times. On August 20, 2018, Google petitioned the Federal Circuit for a writ of mandamus to reverse the decision in *SEVEN Networks*. *See In re Google LLC,* No. 2018-152, 2018 WL 5536478, at *1 (Fed. Cir. Oct. 29, 2018) ("Google principally challenges the district court's conclusion that the Google servers and their locations in the district, under the contracts discussed in the opinion, constitute regular and established places of business of Google's."). The Federal Circuit denied Google's petition, at least because "although we again draw no ultimate merits conclusion, we conclude, based on the district court's opinion, that there is no clear and indisputable error in the court's resolution of this issue." *Id.* at *3.[1] Google then requested rehearing and rehearing en banc of the Federal Circuit's denial of mandamus. See *In re Google LLC*, 2018-152, 2019 WL 438198, at *1 (Fed. Cir. Feb. 5, 2019). Earlier this month, both of these requests were denied by the Federal Circuit in a precedential

---

[1] Unless otherwise stated, all emphasis is added and all internal citations and quotation marks are omitted.

opinion. *See id.* Despite its arguments having been rejected three separate times in the last seven months, Google continues to essentially request reconsideration of the *SEVEN Networks* decision through both its Motion here and a similar motion in at least one other case in this District. *See Dynamic Data Technologies LLC v. Google LLC et al.*, No. 2:18-cv-00466-RWS (E.D. Tex.) at Dkt. No. 22.[2] Given that Google does not even attempt to explain the factual or legal differences that would compel the opposite conclusion to the one reached in *SEVEN Networks*, this Court should reject Google's arguments, as both this Court and the Federal Circuit already have. In the alternative, if the Court believes that more factual development of the issues would be helpful, SIT requests that the Court allow it to conduct targeted venue discovery.

## II.   **UNDISPUTED FACTS**

SIT alleges in its Complaint that "multiple ISPs host Google Global Cache servers in this District, which cache Google's products and deliver them to residents of this District. These Google Global Cache servers cache content that includes video advertising, apps, and digital content from the Google Play store, among other things. Google generates revenue by providing these services to residents of this District. Both the server itself and the place of the Google Global Cache server, independently and together, constitute a 'physical place' and a 'regular and established place of business' of Google." Dkt. No. 1 at 2. SIT also expressly alleges that "acts of infringement" have taken place in this District. Dkt. No. 1 at 3-17.

Google does not dispute any of these alleged facts. Instead, Google futilely attempts to dispute the legal effect of these facts vis-à-vis the venue determination.

---

[2] This docket entry refers to the Redacted version of Google's Motion to Dismiss for Improper Venue and Failure to State a Claim. This motion's section on improper venue contains essentially the same arguments as the present Motion.

Google alleges that its "briefing before the Federal Circuit and this Court in *SEVEN* presented a number of undisputed facts about Google and the GGC servers." Motion at 4. SIT does not concede the truth of the allegations in Section III.B of Google's Motion. Nevertheless, SIT believes that, for the purposes of this Motion, none of these facts would change the outcome of the *SEVEN Networks* decision (to the extent that said facts even differ in any material respect). Additionally, SIT incorporates by reference the undisputed facts listed in this Court's *SEVEN Networks* opinion. *See SEVEN Networks*, 315 F. Supp. 3d at 949-50. These facts are as follows:

1. Multiple ISPs hosted GGC servers in the Eastern District of Texas for at least the five months leading up to the filing of the lawsuit (and they continue to do so).

2. Suddenlink Communications, for example, is an ISP that hosts six GGC servers in Tyler, Texas.

3. CableOne is an ISP that hosts three GGC servers in Sherman, Texas, and three GGC servers Texarkana, Texas.

4. Google caches content on its GGC servers located in the Eastern District of Texas.

5. Google's GGC servers located in the Eastern District of Texas cache content that includes, among other things: (i) video advertising; (ii) apps; and (iii) digital content from the Google Play store.

6. Google's GGC servers located in the Eastern District of Texas deliver cached content referenced in number 5, above, to users in the Eastern District of Texas.

7. Google generates revenue (i) by delivering video advertising, (ii) from apps, and (iii) from digital content in the Google Play store.

8. Google treats its GGC servers in the Eastern District of Texas the same as it treats all of its other GGC servers in the United States.

*Id.*

## III.   LEGAL STANDARD

This Court is well-familiar with the legal standards associated with Motions to Dismiss for Improper Venue in the patent context. The *SEVEN Networks* decision includes a thorough

discussion of the legal requirements of 28 U.S.C. § 1400(b) that SIT will not repeat here in its

entirety. *See SEVEN Networks*, 315 F. Supp. 3d at 938-941. In short, 28 U.S.C. § 1400(b) requires

that there must be (1) a physical place in the district that (2) is a regular and established place of

business which is (3) the place of the defendant. *Id.* at 938 (citing *In re Cray*, 871 F.3d 1355, 1362-

63 (Fed. Cir. 2017)). The final requirement of 28 U.S.C. § 1400(b) is that the "acts of infringement"

must have been committed by the defendant in the district. *See id.* at 942. Importantly, this Court

has "reject[ed] Google's proposition that the special patent venue statute requires that alleged acts

of infringement by the Defendant pled to meet the requirements of § 1400(b) must be tied to or

related to the regular and established place of business of the Defendant, which is separately

required by § 1400(b)." *Id.* at 946.

## IV.   <u>ARGUMENT</u>

### A.   <u>Acts of Infringement</u>

"The acts of infringement referred to in the patent venue statute are those acts defined by

the statute dealing with infringement." *Id.* at 942. If SIT "explicitly allege[s] that at least one step

of each of the claims is performed in this District," then "[t]his is sufficient to establish that acts

of infringement were committed within this District for venue purposes under the patent venue

statute." *Id.* at 944-45. Here, SIT makes an explicit allegation of infringement in this District with

respect to each Asserted Patent. *See* Dkt. No. 1 at ¶¶ 12, 27, and 42. For example, paragraph 12 of

the Complaint alleges that

> ***Google has and continues to directly and/or indirectly infringe (by
> inducing infringement and/or contributing to infringement) one
> or more claims of the '044 patent in this judicial district and
> elsewhere in the United States***, including at least claims 1, 2, 8, 9,
> 10, 11, 12, 13, 14, 15 and 19, by, among other things, ***making,
> having made, using, offering for sale, selling, and/or importing
> electronic devices with Universal Flash Storage (UFS) that
> incorporate the fundamental technologies covered by the '044
> patent.*** These products are referred to as the "'044 Accused

> Products." Examples of the '044 Accused Products include, but are
> not limited to, the Google Pixel and Google Pixel XL smartphones.

*Id.* at ¶ 12 (emphasis added). Accordingly, this Court should find that SIT has adequately alleged "acts of infringement" in this District under the second prong of 28 U.C.S. § 1400(b).

### B.     Physical Place

Google does not directly contest the "physical place" requirement as discussed by this Court in *SEVEN Networks*. Instead, it combines this requirement with the second requirement of "a regular and established place of business" to argue that the GGC servers are not "physical places of business." Motion at 6. The correct analysis of this requirement, however, focuses on whether the place at issue is a physical one, as opposed to "merely to a virtual space or to electronic communications from one person to another." *Cray*, 871 F.3d at 1362. Here, as discussed in *SEVEN Networks*, the "'place' is specifically localized: a physical server occupying a physical space. Not only does Google exercise exclusive control exercised over the digital aspects of the GGC, Google exercises exclusive control over the physical server and the physical space within which the server is located and maintained." *SEVEN Networks*, 315 F. Supp. 3d at 951.

Rather than addressing this issue head-on, Google instead discusses two other district court cases that reached the opposite conclusion. But one of those cases, *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 934 (E.D. Tex. 2017) was explicitly criticized by this Court's *SEVEN Networks* decision. *SEVEN Networks*, 315 F. Supp. 3d at 950 ("With respect to its sister court, this Court disagrees with that conclusion. A revisiting of the ultimate decision of *Personal Audio* on this issue is not only possible but compelled by the facts of this case. Additionally, in this Court's opinion, neither the statute nor the Federal Circuit's guidance in *In re Cray* permit the result reached by that court."). And in the other decision, *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-cv-1554 (N.D. Tex.), the Court merely noted the disagreement among district courts on

this issue before finding that "[a]fter considering the parties' arguments, the relevant case law, and the language of the statute, the Court finds that Symantec's servers do not constitute a regular and established place of business in this District." *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-cv-1554 (N.D. Tex.), Dkt. No. 53 at *6.[3] But this finding does not mean that the Court in *CUPP* would have found Google's GGC servers located in this District do not constitute a physical place. While the facts in this case are in all material respects identical to the facts in *SEVEN Networks*, Google fails to demonstrate that the undisputed facts in this case are the same as the facts that were present in the *CUPP* case.

Accordingly, this Court should find, as it did in *SEVEN Networks*, that the GGC server and its place in this District constitutes a "physical place."

## C.   Regular and Established Place of Business

### 1.   Place of Business

In *SEVEN Networks*, this Court found that the GGC servers were a "place of business" because, among other things, other courts have found that other similar places, like vending machines, are places of business. This Court also found that the GGC servers were akin to warehouses: "GGC servers in the Edge Nodes function as local data warehouses, much like a shoe manufacturer might have warehouses around the country." *SEVEN Networks*, 315 F. Supp. 3d at 948. Because of this, the Court found:

> Here, the GGC servers are best characterized as local data warehouses, storing information in local districts to provide Google's users with quick access to the cached data, avoiding the delays associated with distant data retrieval from Google Data Centers. (Dkt. No. 141 at 4). This type of logistical positioning is commonplace for larger corporate interests, especially where prompt delivery is a core aspect of a business strategy. This is the case with Google. Holding that Google's business done at and

---

[3] This case was attached as Exhibit A to Google's Motion.

> through the GGC servers faithfully comports with the language of
> the statute; it is the logical result this Court has reached.

*Id.* at 961. Furthermore, "[i]t is the server, its physical location within this District, the control exerted over both the server and its location under the GGC agreements (like the Suddenlink Agreement), and the other circumstances here present that lead this Court to conclude these facts meet the strict statutory application laid out by the Federal Circuit in *In re Cray*." *Id.* at 955-56.

In response to this, Google essentially rehashes the same arguments that this Court has already considered, and rejected, in *SEVEN Networks*. First, it cites to cases that essentially say that pieces of equipment, like servers or vending machines, are not places of business. Motion at 7. But this Court already considered the same cases and distinguished them in *SEVEN Networks*. *SEVEN Networks,* 315 F. Supp. 3d at 954-56.  For instance, one case cited by Google dealt with whether slot machines established a place of business for **individuals**. This issue is not present here. Another case cited by Google dealt with a "sales establishment" under the ADA and has no applicability to the present analysis. Tellingly, Google offers no reason why these cases are not distinguishable for the same reasons the Court found in *SEVEN Networks.*

Google then argues that the warehouse analogy is inapt, instead comparing the GGC severs to storage lockers. But it is not only the servers in isolation that constitute a "place of business." Rather, where a party "integrate[s] the storage arrangement into its own logistical operations (similar to, for example, Amazon and its relationship with its own fulfillment centers), there can be little doubt that the storage warehouses are places of business, *even if the public never interacts with the warehouse.*" *Id.* at 960 (emphasis in original). Yet again, Google does not explain why it believes the reasoning of this Court was incorrect with regard to the warehouse comparison, instead citing generic cases where storage units, which are not at issue here, were found not to be places of business.

Accordingly, this Court should find that the GGC servers and the place of the servers constitutes a "place of business" under 28 U.S.C. § 1400(b).

### 2.        *Regular and Established*

In a single paragraph, Google argues that the GGC servers are not "regular and established" because the servers are not permanent. Motion at 8 ("The storage of personal property on the shelf of a third party pursuant to an agreement that can be terminated at any time for any reason is not enough to establish that the GGC servers in this District are 'fix[ed] permanently.'"). But this Court in *SEVEN Networks*, again, has already considered and rejected this argument. *SEVEN Networks,* 315 F. Supp. 3d at 957 ("There is little question that Google intends the GGC servers to be a '[s]calable long term solution for edge content distribution,' and it is undisputed that they have been such a solution in this District for years. The fact that the Suddenlink Agreement may be terminated is not evidence that Google's presence in this District is somehow less than 'regular and established.'"). Clearly, the issue is not, as Google insists, whether it is ***possible*** that the servers and places of servers might be temporary. Instead, as *SEVEN Networks* demonstrates, the issue is whether or not the servers and places of servers in fact have been "regular and established." Google does not even address this issue, much less explain why this Court should reconsider *SEVEN Networks* and come to the opposite conclusion for the "regular and established" requirement. Finally, Google does not contend that the regular and established use of the GGC servers has been altered or interrupted in the time since the *SEVEN Networks* decision, which further demonstrates that the facts present here are effectively the same as those in *SEVEN Networks.*

Accordingly, this Court should find that the GGC servers and the place of the servers constitutes a "regular and established" under 28 U.S.C. § 1400(b).

### D.     **Of The Defendant**

In *SEVEN Networks*, this Court found that the GGC servers, and the spaces where they are located, are "under the exclusive control of Google. The rack space allotted for the GGC server is provided to Google." *SEVEN Networks*, 315 F. Supp. 3d at 965. "Google's ownership of the server and its contents is absolute, as is its control over the server's location, once installed." *Id.* (quoting Dkt. No. 141-23 in *SEVEN Networks* at 6). This Court further noted that "the defendant lists the alleged place of business on a website" when it states on http://peering.google.com that "[o]ur Edge Network is how we connect with ISPs to get traffic to and from users" and that this content traffic "can come from multiple *Google locations, including our data centers Edge PoPs, and Edge Nodes*." (emphasis in original).  *Id.* at 965-66.

Google attempts to counter these facts by arguing that "[t]here is no Google sign or other indication on any ISP facility that the facility is affiliated with Google." Motion at 9. Irrespective of whether that fact is true, Google ignores the law cited by this Court in *SEVEN Networks*, which provides that Google's own *website* lists the GGC servers as a place of business. Google's other arguments regarding its supposed lack of ownership of the *facility* housing the GGC servers again misses the point. This Court found that the server itself and the place where the server is located (not the entire facility) are regular and established places of business *of Google. Id.* at 965 ("[T]he place of the place of business is not the room or building of the ISP but rather Google's server and the space wherein it is located."). Google has offered nothing to counter this Court's well-reasoned determination that the GGC servers and their locations are regular and established business *of Google* and this Court should thus find that venue is proper in this District as to Google under the second prong of 28 U.S.C. § 1400(b).

**E.      SIT Need Not Show a Tie Between Google's Acts of Infringement and the "<u>Regular and Established Place of Business</u>."**

Unsurprisingly, Google's final argument is yet another one that this Court explicitly rejected on the same facts in *SEVEN Networks*. Google's argument that the "acts of infringement" must be tied to or related to the "regular and established place of business" improperly narrows the patent venue statute and "ignore the facial independence of the statutory elements." *SEVEN Networks,* 315 F. Supp. 3d at 945. Google's only authorities in support of its position are two contrary district court opinions that are each more than forty years old. This shows that either Google has not researched the current state of the law or that there are no more recent decisions to support its position. In either event, the vast majority of authority does not impose the requirement of tying the "acts of infringement" element to the "regular and established place of business" element. And as this Court found in *SEVEN Networks*, "[i]t is not 'unfair' to require a defendant to answer suit in a district wherein a defendant has a regular and established place of business and is alleged to have committed acts of infringement. Google would have the Court improperly read a requirement into the statute where none exists and ignore the facial independence of the statutory elements. The Court declines to do so." *Id*. This Court further noted that the Federal Circuit has never spoken on the issue of tying the acts of infringement to the place of business and that "many other courts reached the opposite conclusion, holding that 'the regular and established place of business need not be the business connected with the alleged patent infringement.'" *Id.* The Federal Circuit's opinion denying mandamus to Google in *SEVEN Networks* also observed that: "[This issue] is not one on which there is currently a substantial degree of disagreement or a demonstrated need for immediate appellate resolution." *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018).

Here, as in *SEVEN Networks*, this Court should determine that there is no requirement to tie the infringement to the place of business, and find that venue is proper as to Google.

### F.     Venue Discovery

If the Court cannot determine whether venue is proper based on the facts discussed here and in *Seven Networks*, SIT requests leave to take limited venue discovery in order to further support its allegation that the GGC servers are regular and established places of business in this District. This Court applies a "good cause" standard to determine whether to allow expedited discovery. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 3382806, at *2 (E.D. Tex. July 21, 2017). Factors considered include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-cv-258-JRG, 2017 WL 3382806, at *1 (E.D. Tex. July 21, 2017). Here, there is no preliminary injunction pending; the discovery would be very tightly focused on the question of whether the GGC servers are a regular and established place of business; the purpose of the discovery is to aid the Court in its determination of this Motion; the burden on Google would be minimal because (1) the discovery is narrow and (2) Google has already completed nearly identical discovery in *SEVEN Networks*; and regular discovery may begin as soon as this Court sets this case for scheduling. Thus, good cause exists to conduct limited venue discovery if the Court believes it is unable to decide this Motion based on the facts presented here.

## V.     CONCLUSION

Google has had repeated chances to litigate the appropriateness of fixing venue in this District over Google both before this Court and before the Federal Circuit. Its arguments have now failed to persuade the courts in three separate decisions. This Court should find that the fourth time

is *not* a charm for Google, and deny Google's Motion because Google's GGC servers and their places in this District constitute "regular and established places of business of Google." This fact, combined with Google's infringement of the patents-in-suit in this District, is all that is needed to demonstrate that the second prong of 28 U.S.C. § 1400(b) is satisfied.

Dated: February 19, 2019                          Respectfully submitted,

                                                  */s/ Jeffrey R. Bragalone*
                                                  Jeffrey R. Bragalone
                                                  Texas Bar No. 02855775
                                                  T. William Kennedy Jr.
                                                  Texas Bar No. 24055771
                                                  Brian P. Herrmann
                                                  Texas Bar No. 24083174

                                                  **Bragalone Conroy PC**
                                                  2200 Ross Avenue
                                                  Suite 4500W
                                                  Dallas, TX 75201
                                                  Tel: (214) 785-6670
                                                  Fax: (214) 785-6680
                                                  jbragalone@bcpc-law.com
                                                  bkennedy@bcpc-law.com
                                                  bherrmann@bcpc-law.com

                                                  OF COUNSEL:
                                                  Wesley Hill
                                                  State Bar No. 24032294
                                                  **Ward, Smith & Hill, PLLC**
                                                  PO Box 1231
                                                  Longview, Texas 75606-1231
                                                  (903) 757-6400 (telephone)
                                                  (903) 757-2323 (facsimile)
                                                  wh@wsfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on this the 19th day of February, 2019.

/s/ Jeffrey R. Bragalone
Jeffrey R. Bragalone